# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

DONNA CARTER,

    Plaintiff,

    v.

CITY OF DOUGLAS,

    Defendant.

CV 514-74

## ORDER

Pending before the Court is Defendant City of Douglas' ("Defendant") Motion for Summary Judgment (Dkt. No. 33) and Motion to Strike Affidavit (Dkt. No. 41). Plaintiff Donna Carter ("Plaintiff") claims that she was fired from her job as a Senior Cashier because of her race (African-American) and gender (female). Defendant counters that Plaintiff was fired as a result of her insensitive treatment of a customer. There is no question of material fact as to any of Plaintiff's Title VII and Equal Pay Act discrimination claims. Defendant is entitled to Summary Judgment on all claims as a matter of law. As explained below, Defendant's Motion to Strike Affidavit (Dkt. No. 41) and Motion for Summary Judgment (Dkt. No. 33) are **GRANTED**.

### Motion to Strike Plaintiff's Affidavit

Plaintiff filed an unsigned, undated, and un-notarized Affidavit from an individual named Barbra Paulk ("Paulk"). Dkt. No. 36-6. Defense counsel responded by filing the instant Motion to Strike Affidavit of Barbra Paulk on October 22, 2015. Dkt. No. 41. Plaintiff never responded to this Motion.

The Court cannot consider the Affidavit as evidence in its present state. See Alexander-Johnson v. Lids/Hat World, No. 1:07-CV-865-TWT, 2008 WL 5115195, at *6 (N.D. Ga. Dec. 2, 2008) (explaining that plaintiff's unsigned and un-notarized affidavit failed to conform to the definition of an affidavit and could not be considered); Smith v. Prine, No. 7:09-CV-153(HL), 2012 WL 2308639, at *2 (M.D. Ga. May 2, 2012), report and recommendation adopted, 2012 WL 2288083 (M.D. Ga. June 18, 2012) (explaining that an "affidavit" excluding "the jurisdiction wherein the notarization took place or the notary public's commission expiration date . . . is not a sworn affidavit or declaration which can be considered in the determination of defendants' motion for summary judgment"). While the Court is aware that an unsworn affidavit may qualify as an unsworn declaration under 28 U.S.C. § 1746, such affidavits must be signed, in writing, and dated, verifying that their content is "true under penalty of perjury." 28 U.S.C. § 1746. Paulk's unsigned, undated, and un-notarized Affidavit cannot qualify as an unsworn declaration under 28 U.S.C. § 1746. Further, the Court has no assurance

that Paulk's Affidavit is "true under penalty of perjury." <u>See</u> <u>id</u>.

Accordingly, Defendant's Motion to Strike Barbra Paulk's Affidavit will be **GRANTED** and the Affidavit will not be considered as evidence.

### FACTUAL BACKGROUND

On September 15, 1998, Defendant hired Plaintiff as an Office Manager. Dkt. No. 33-6, ¶ 3. In 1999, Plaintiff began work as a cashier in the Customer Service Department. <u>Id</u>. Beginning on April 13, 2011, Plaintiff accepted the position of Senior Cashier and supervised three other cashiers. <u>Id.</u>

Defendant reprimanded Plaintiff approximately six times during her tenure. <u>Id.</u> Defendant maintains that Plaintiff was a difficult employee who had problems getting along with both co-workers and supervisors. Dkt. No. 33-14, ¶¶ 2-3; Dkt. No. 33-17, ¶ 5; Dkt. No. 33-19, 38:20-41:15. Plaintiff filed approximately sixteen grievances and four Equal Employment Opportunity Commission ("EEOC") claims. <u>Id.</u> ¶ 4. . Defendant contends that supervisory personnel were reluctant to work with Plaintiff because she was disruptive and resisted counseling. Dkt. No. 33-14, ¶ 7; Dkt. No. 33-19, 40:9-41:15. Plaintiff agrees that she filed a number of grievances during her employment, dkt. no. 33-20, 103:1-104:16, but she denies Defendant's characterization of her as contentious. Dkt. No.

AO 72A
(Rev. 8/82)

33-20, 101:4-102:22; Dkt. No. 38, ¶ 3. Moreover, Plaintiff alleges that customers "love[d]" her. Dkt. No. 33-20, 102:13.

On December 12, 2012, an incident occurred between Plaintiff and her supervisor, Tommy Harrell ("Harrell"). Dkt. No. 33-6, ¶ 5; Dkt. No. 33-17, ¶ 4; Dkt. No. 33-20, 34:1-13. Harrell informed Plaintiff on several prior occasions that she must clock out on time and "hand-off" customers to other employees when her lunch break began, but Plaintiff failed to timely observe her lunch break. Dt. No. 33-17, ¶ 4. Moreover, all employees had to abide by the lunch break rules. Dkt. No. 33-7, pp. 14-15. Plaintiff concedes that she took her lunch hour according to her personal schedule. Dkt. No. 33-7, p. 2; Dkt. No. 33-20, 35:11-15.

On December 12, 2012, the office was short-staffed. Id. at p. 2. Plaintiff was assisting a customer when Harrell instructed her to clock out for lunch at her scheduled time of 11:00 a.m. Dkt. No. 33-20, 35:5-18. Plaintiff informed Harrell that she would take lunch when she was finished helping the customer. Id. at 36:4-6. As Plaintiff finished, Harrell followed her to the time-clock. Id. at 36:8-37:13. Plaintiff told Harrell to "stop riding my back, because I am not the one." Id. at 40:17-20. Plaintiff clarified that she meant that Harrell should not follow her because she was not someone who could be harassed for no reason. Id. at 37:6-14. Harrell

AO 72A
(Rev. 8/82)

walked away without responding to Plaintiff's comment. Id. at 38:12-14.

Plaintiff maintains that her comment to her supervisor was appropriate because (1) she clocked out for lunch and was off the clock and (2) she made her comment politely. Id. at 40:13-19. As Plaintiff left the building for lunch, she walked out with her co-worker, and immediately told her co-worker that Harrell was harassing Plaintiff. Dkt. No. 33-20, 39:19-42:10. Plaintiff maintains that when Harrell saw her talking to her co-worker, he immediately ran from his office to the parking lot where Plaintiff was sitting in her vehicle. Id. at 42:24-44:9. Harrell angrily told her to see him when she returned from lunch, while pointing at her and swinging his arm. Id. at 44:3-9. Harrell told Plaintiff that he "intended to write her up." Dkt. No. 33-17, ¶ 4. By the time Harrell returned from his lunch break, Plaintiff had already reported the incident to City Manager Terrell Jacobs ("Jacobs"). Id. In her complaint to Jacobs, Plaintiff claimed that Harrell harassed her. Dkt. No. 33-20, 45:9-52:12.

In response to Plaintiff's grievance, and after a hearing, Jacobs determined that there "was not substantial evidence to prove [Plaintiff's] allegations" of harassment. Dkt. No. 33-7, pp. 14-15. Jacobs informed Plaintiff in a letter that she needed to comply with (1) her supervisor's directions regarding

the timing of her lunch break and (2) Defendant's policies for filing complaints. Id. at p. 15.

In June 2013, Defendant reorganized departments, creating a Customer Care Service Center. Dkt. No. 33-6, ¶ 6. Plaintiff was reassigned to that department, as a Senior Customer Care Specialist. Id. Plaintiff's pay and job duties did not change, except that she was no longer responsible for accepting customer payments and no longer worked at a counter. Id.; Dkt. No. 33-20, 62:14-16. She had a desk in the new office in the same building. Dkt. No. 33-6, ¶ 6. City Clerk Wynetta Bolder ("Bolder") became the new department supervisor, replacing Harrell. Id.; Dkt. No. 33-20, 62:6-7, 85:8-87:81. Plaintiff was unhappy about the selection of Bolder as supervisor, alleging that Bolder harbors a longstanding, personal grudge against her. Dkt. No. 33-6, ¶ 6.

On July 9, 2013, Plaintiff filed a Charge of Discrimination with the EEOC. Id. ¶ 7. Specifically, Plaintiff alleged that the incident with Harrell constituted a racially hostile work environment and that Defendant retaliated against her due to her race by requiring her to work weekend shifts in addition to her weekday hours. Id.; Dkt. No. 33-8, pp. 1-2. Each employee in the department, however, regardless of race or gender, covered the weekend shift. Dkt. No. 33-6, ¶ 7. When Plaintiff complained that the weekend shifts interfered with her care for

her disabled son, her shift was changed to accommodate her. Id.; Dkt. No. 33-20, 64:1-8; Dkt. No. 33-14, ¶ 4.

Plaintiff received two warnings from Bolder after filing the EEOC charge—specifically, a July 31, 2013, oral warning, dkt. no. 33-6, ¶ 8; dkt. no. 33-19, p. 24; and a September 19, 2013, written warning. Dkt. No. 33-6, ¶ 9. Defendant claims that the July 31, 2013 warning was for "insubordination, teamwork, attitude toward management and being consistent in doing [] work in a timely manner." Dkt. No. 33-6, ¶ 8; Dkt. No. 33-19, p. 24; Dkt. No. 33-9, p. 2. Defendant maintains that the September 19, 2013 warning was after Plaintiff involved a customer in a dispute. Dkt. No. 33-6, ¶ 9; Dkt. No. 33-19, 44:11-45:18.

Plaintiff alleges that Bolder told her that she received the oral reprimand for issues that occurred between Plaintiff and Harrell on Bolder's day off. Dkt. No. 33-19, 47:5-12. According to Plaintiff, Bolder only reprimanded Plaintiff after Harrell relayed the details of the incident to her. Id. Plaintiff also denies that she was resistant to Bolder's supervision. Rather, she claims that Bolder singled her out to harass her. Id. at 47:5-8, 47:17-48:2. Plaintiff also maintains that she received a memorandum from Jacobs threatening to reprimand her for speaking out against the reorganization of the office. Dkt. No. 36, p. 4.

7

In October of 2014, Plaintiff was reprimanded again, after Plaintiff transferred a phone call to Jacobs. Dkt. No. 33-6, ¶ 10; Dkt. No. 33-11, pp. 2-4; Dkt. No. 33-14, ¶ 5. According to Defendant, Plaintiff was rude and disrespectful to Jacobs when he attempted to counsel Plaintiff regarding the transferred call. Dkt. No. 33-14, ¶ 5; Dkt. No. 33-6, ¶ 10; Dkt. No. 33-11, pp. 2-4. According to Plaintiff, she believes that she was reprimanded because Jacobs felt that she should have known that he was busy and could not take the call at the moment. Dkt. No. 33-19, p. 26. Plaintiff alleges that at the time of the phone call, Jacobs' secretary was out of the office and office procedure dictated that she directly transfer all phone calls to him in his secretary's absence. Id. On October 29, 2014, Plaintiff and her attorney met with Jacobs, where she promised to improve her attitude and conduct. Dkt. No. 33-14, ¶ 5.

On January 20, 2015, Plaintiff was suspended for three days with pay pending an investigation into a customer complaint. Dkt. No. 33-6, ¶ 11; see generally Dkt. No. 33-12. Specifically, the customer complained that when Plaintiff answered a call from her, Plaintiff spoke to her as if she were a child, while affecting an indeterminate accent. Dkt. No. 33-3. Plaintiff's tone and commentary offended the Hispanic customer. Dkt. No. 33-12, pp. 5, 14. Shortly thereafter, the customer filed a written complaint with Bolder and Jacobs about

AO 72A
(Rev. 8/82)

the treatment that she received. Id. at p. 8, 10. The customer complained that she

> received a call sayin [sic] asking [her] if [she] sp[oke] English [she] responded 'Yes, I do speak English,' and the lady that spoke with [her] changed her voice acting like [the customer] couldn't speak English and being kind of racist, telling [the customer that her] bill was due the next day or it would be cut off.

Id.

Bolder and Jacobs reviewed the audio tape of the conversation and determined that Plaintiff spoke to the customer inappropriately. Id. at pp. 8, 10, 19, 21, 24-25. Following an investigation of Plaintiff's involvement with the customer, Plaintiff's employment was terminated on February 3, 2015. Dkt. No. 33-6, ¶ 11; see generally Dkt. No. 33-12.

Plaintiff denies that she spoke to the customer like a child and that she was terminated as a result of the phone call. Dkt. No. 38, ¶¶ 24-25. Instead, Plaintiff alleges that she was fired on account of her race and gender. Id. Plaintiff also contends that Bolder asked the customer to file the complaint against Plaintiff to get her fired. Id. ¶ 26. Bolder explains that the conversation between herself and the customer occurred because

> one of the customer service care specialists told [her] that there was a customer [who] had a complaint and needed to speak with [her] about the complaint. [Bolder] had

> been out of the office. And so [Bolder] got
> [the customer's] number, called [the
> customer], told [the customer] when [Bolder]
> – you know, when [she] could be in. [The
> customer] called – [the customer] came by
> the office.

Dkt. No. 33-19, 62:21–63:2. On March 7, 2015, Plaintiff filed an additional Charge of Discrimination with the EEOC, maintaining that she was terminated in retaliation for filing a prior EEOC charge. Dkt. No. 33-6, ¶ 12; Dkt. No. 33-13.

Plaintiff also claims that she was paid less than comparable female Caucasian employees and an African-American male employee. Dkt. No. 29, ¶ 23. Plaintiff identified the African-American male employee as Michael Stull ("Stull"). Dkt. No. 36, p. 8. Stull was a cashier and he earned approximately $1000 less than Plaintiff. Dkt. No. 33-6, ¶ 18; Dkt. No. 36-10.[1]

## PROCEDURAL BACKGROUND

On September 29, 2014, Plaintiff filed suit in this Court, seeking relief for the following claims: (1) violations of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); (2) race and age discrimination; and (3) retaliation.[2] See generally Dkt. No. 29. Plaintiff also seeks compensatory and punitive damages, in addition to an award of attorney's fees. Id. at p. 18. Now

---

[1] Stull replaced Plaintiff as Senior Cashier when she was terminated. Dkt. No. 33-6, ¶ 19.

[2] Plaintiff initially set forth a state law claim for negligent retention against Defendant. Dkt. No. 29, ¶¶ 47–57. In Plaintiff's Response to Defendant's Statement of Material Facts, dkt. no. 38, Plaintiff conceded that she "is no longer pursuing the state law claims." Id. at p. 7. Given that Plaintiff conceded the invalidity of the state law claims, the Court **GRANTS** Summary Judgment as to Plaintiff's state law claims.

AO 72A
(Rev. 8/82)

pending before the Court is Defendant's Motion for Summary Judgment (Dkt. No. 33), Plaintiff's Response in Opposition thereto (Dkt. No. 36), and Defendant's Reply (Dkt. No. 42).

## LEGAL STANDARD

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (quoting Anderson, 477 U.S. at 248). In making this determination, the court views all of the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case.

11

Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in two ways: First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex, 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant instead attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

## DISCUSSION

Plaintiff argues that Defendant discriminated against her on account of her race and age when Defendant terminated her

AO 72A
(Rev. 8/82)

following approximately sixteen years of employment. See generally Dkt. No. 36. Plaintiff believes that her supervisors waged a concerted effort to terminate her. Id. at pp. 9-13. Indeed, Plaintiff contends that her supervisors encouraged co-workers and customers to lodge complaints against her, which ultimately led to her termination. Id. In response to these perceived wrongs, Plaintiff brings claims pursuant to the EPA, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.

## I. Plaintiff's Equal Pay Act, 29 U.S.C. § 206(d), Claim Fails

The EPA, 29 U.S.C. § 206(d), exists "to prevent and combat gender discrimination in the provision of wages." Hundertmark v. Fla. Dep't of Transp., 205 F.3d 1272, 1275 (11th Cir. 2010) (per curiam). Courts utilize a burden-shifting framework when determining whether an employer illegally discriminated against an employee in violation of the EPA. Irby v. Bittick, 44 F.3d 949, 954 (11th Cir. 1995). To prove a prima facie case under the EPA, the plaintiff must show that "the employer paid employees of opposite genders different wages for equal work for jobs [requiring] equal skill, effort, and responsibility, and which are performed under similar working conditions." Steger v. Gen. Elec. Co., 318 F.3d 1066, 1077-78 (11th Cir. 2013) (quotation marks and citations omitted). "The plaintiff need not prove that the job held by her male comparator is identical

AO 72A
(Rev. 8/82)

to hers; she must demonstrate only that the skill, effort, and responsibility required in the performance of the jobs are 'substantially equal.'" Dimino v. Ga. Dep't of Admin. Servs., 631 F. App'x 745, 746 (11th Cir. 2015) (citing Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1533 (11th Cir. 1992) (quoting 29 U.S.C. § 206(d)(1))). A prima facie case for unequal pay is not satisfied where the job responsibilities of the alleged comparator were greater than the plaintiff's. See Waters v. Turner, Wood & Smith Ins. Agency, Inc., 874 F.2d 797, 799–800 (11th Cir. 1989) (per curiam). The Court notes that while job titles are given some weight, titles alone are not dispositive as to the degree of similarity between the responsibilities of different jobs. Mulhall v. Advance Sec., Inc., 19 F.3d 586, 592 (11th Cir. 1994).

Here, Plaintiff cannot make out a prima facie case under the EPA. Plaintiff argues that she did not receive a pay increase due to her gender, dkt. no. 36, p. 8, but she never provided the Court with any evidence of this denial. Without such evidence, the Court cannot simply provide her requested relief. Plaintiff specifically names Stull, an African-American male who worked as a Cashier, as a comparator for the purposes of her EPA claim. Dkt. No. 33-6, ¶ 19. Plaintiff alleges that Stull, who had less experience and education, was hired after her at a higher rate of pay. Dkt. No. 36, p. 8. In support of

AO 72A
(Rev. 8/82)

this argument, Plaintiff cites to Exhibit 12, which she alleges demonstrates that Stull earned more money than she did. Dkt. No. 36-10. Contrary to Plaintiff's argument, Exhibit 12 demonstrates that Plaintiff earned more than Stull, given that her salary was $28,184 while Stull earned $27,476. Id. This exhibit establishes that Stull earned less than she did. Id. It is clear that Plaintiff fails to establish a prima facie case of discrimination under the EPA. Accordingly, Defendant's Motion for Summary Judgment will be **GRANTED** as to Plaintiff's EPA claim.

## II. Plaintiff Failed to Establish a Race Discrimination Case under Title VII

To prove intentional discrimination, a plaintiff may offer direct evidence, circumstantial evidence, or statistical proof. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010). "Direct evidence is evidence which, if believed, proves the existence of a fact without inference or presumption." Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227 (11th Cir. 2002). Here, Plaintiff's only proffered evidence of discriminatory intent is her contention that she, a female African-American, was fired as a result of a customer complaint while other Caucasian employees with similar disciplinary histories were not. Dkt. No. 36, pp. 9-13. This type of evidence is neither statistical nor direct. Plaintiff

must therefore prove her Title VII race discrimination claim with circumstantial evidence.

### A. Plaintiff Fails to Establish a Prima Facie Case of Race Discrimination

The Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), established a three-part inferential analysis for discrimination claims based on circumstantial evidence. "Under this framework, the plaintiff first has the burden of establishing a *prima facie* case of discrimination, which creates a rebuttable presumption that the employer acted illegally." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528-29 (11th Cir. 1997). To establish a prima facie case of disparate treatment in a race discrimination case, a plaintiff must show: "(1) [s]he belongs to a racial minority; (2) [s]he was subjected to [an] adverse job action; (3) h[er] employer treated similarly situated employees outside h[er] racial classification more favorably; and (4) [s]he was qualified to do the job." <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997) (citations omitted).

On the basis of the undisputed facts, Plaintiff has failed to satisfy the requirements for a prima facie case of employment discrimination. Plaintiff is a member of a protected class, was indeed terminated from her position, and was qualified to do her job. She nonetheless fails to satisfy a prima facie case of

AO 72A
(Rev. 8/82)

discrimination, however, because she has not produced a sufficient comparator. In addition, even if she could establish a prima facie case, she cannot establish that her termination was pretextual.

### 1. Plaintiff Did Not Produce Evidence of a "Sufficiently Similar" Comparator

To qualify as a comparator, a plaintiff must point to non-minority employees who are similarly situated in all relevant aspects. See Holifield, 115 F.3d at 1562. A court considers "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Id. (citing Williams v. Ford Motor Co., 14 F.3d 1305, 1309 (8th Cir. 1994)).

The Court notes that for the purposes of her racial discrimination claim, Plaintiff never named a single "similarly situated," non-minority employee to be used as a comparator to establish a prima facie case of racial discrimination. Holifield, 115 F.3d at 1562. Indeed, the only employee Plaintiff identifies as a potential comparator is Stull—but he is only referenced for the purposes of her EPA claim. Dkt. No. 36, p. 8. Stull, an African-American man who was supervised by Plaintiff, cannot begin to meet the criteria as a comparator for a Title VII racial discrimination claim.[3] Given that Plaintiff

---

[3] The Court notes that Plaintiff disputes the qualifications of four employees in Plaintiff's Response to Defendant's Statement of Material Facts. Dkt. No.

AO 72A
(Rev. 8/82)

failed to provide evidence of a comparator summary judgment is appropriate. _Holifield_, 115 F.3d at 1562.

### 2. Plaintiff Cannot Establish that her Termination was Pretextual

Notwithstanding the above, the Eleventh Circuit allows a Plaintiff to survive summary judgment "if [s]he presents circumstantial evidence that creates a triable issue regarding the employer's discriminatory intent." _Smith v. Lockheed-Martin Corp._, 644 F.3d 1321, 1328 (11th Cir. 2011); _see also Holifield_, 115 F.3d at 1562. Even if Plaintiff were able to establish a prima facie case, summary judgment for the Defendant would still be proper because Plaintiff failed to present sufficient evidence of pretext.

"The inquiry into pretext centers upon the employer's belief, and not the employee's own perceptions of his performance." _Holifield_, 115 F.3d at 1565. "The plaintiff must demonstrate weaknesses or implausibilities in the employer's proffered reasons for its action sufficient for a reasonable factfinder to disbelieve the reasons." _Rioux v. City of Atlanta_, 520 F.3d 1269, 1278 (11th Cir. 2008) (citing _Silvera v._

---

38, ¶¶ 29-32. Perhaps Plaintiff is attempting to use the named individuals as comparators. The Court, however, will not infer an argument where none is expressly made in counsel's motion. _See Resolution Tr. Corp. v. Dunmar Corp._, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." (internal citations omitted)).

AO 72A
(Rev. 8/82)

Orange Cty. Sch. Bd., 244 F.3d 1253, 1258 (11th Cir. 2001)).
"It is the plaintiff's burden not merely to raise a suspicion
regarding an improper motive, but rather to demonstrate there is
a genuine issue of material fact that the employer's proffered
reason for his demotion was pretextual." Chapman v. AI Transp.,
229 F.3d 1012, 1024-25 (11th Cir. 2000).

The Court is not "in the business of adjudging whether
employment decisions are prudent or fair." Damon v. Fleming
Supermarkets of Fla., Inc., 196 F.3d 1354, 1360-61 (11th Cir.
1999). Instead, courts focus attention on "whether unlawful
discriminatory animus motivates a challenged employment
decision." Id. The Eleventh Circuit noted that "[c]onclusory
allegations of discrimination, without more, are not sufficient
to raise an inference of pretext or intentional discrimination
where [an employer] has offered . . . extensive evidence of
legitimate, non-discriminatory reasons for its action." Carter
v. Miami, 870 F.2d 578, 585 (11th Cir. 1989).

Here, Defendant cites Plaintiff's insensitive telephone
conversation with a customer as one of the reasons for her
termination. Dkt. No. 33-2, p. 13. Specifically, Defendant
underscores the fact that Plaintiff "denied any wrongdoing, and
expressed no understanding of why speaking to a customer in that
manner was inappropriate and insulting." Id. at p. 5; Dkt. No.
33-19, 77:1-79:17; Dkt. No. 33-6, ¶ 11; Dkt. No. 33-12, p. 11.

19

Defendant has thus articulated a "legitimate" reason regarding Plaintiff's termination. Accordingly, the burden now shifts back to the Plaintiff to prove that Defendant's proffered reason was pretextual. Holifield, 115 F.3d at 1565.

Plaintiff, however, cannot prove that Defendant's reason for firing her was pretextual. Plaintiff alleges the following in support of her argument that the decision to fire her was pretextual: (1) employees were solicited to write false statements about her; (2) Bolder solicited the customer complaint that precipitated her termination; and (3) Bolder was instructed to write up the Plaintiff. Dkt. No. 36, pp. 9-13. These allegations lack any evidentiary support from the record.

First, Paulk's Affidavit cannot be used to prove that employees wrote false statements about Plaintiff. Second, Plaintiff appears to misunderstand how the customer's complaint reached Bolder. Plaintiff cites Bolder's deposition testimony as standing for the proposition that Bolder initiated and requested that the customer file a complaint against Plaintiff. See Dkt. No. 33-19, 62:21-63:13. In reference to the complaint by the customer, Bolder explained that she:

> received – actually one of the customer service care specialists told [her] that there was a customer [who] had a complaint and needed to speak with [her] about the complaint. [Bolder] had been out of the office. And so [Bolder] got [the customer's] number, called [the customer],

> told [the customer] when [Bolder] – you
> know, when [she] could be in. [The
> customer] called – [the customer] came by
> the office.

Dkt. No. 33-19, 62:21-63:2. It is clear from this explanation that Bolder called the customer in response to a report from a customer care specialist. There is no evidence in the record, other than Plaintiff's conclusory statements, that Bolder initiated the phone call to the customer with the express purpose of collecting negative reports about Plaintiff to precipitate her termination. Finally, even crediting Plaintiff's assertion that Bolder wrote her up at Harrell's request, that single allegation is not sufficient to support a claim of retaliation.

Plaintiff denies that she was rude to the customer. Dkt. No. 33-12, p. 4 (explaining that she "didn't say anything offensive" to the customer). This denial, however, is insufficient to prove that Defendant's acts were pretextual. Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (explaining that establishing a violation of a work rule is insufficient to survive a motion to dismiss. Instead holding that employee must show employer terminated employee for a discriminatory reason); see also Smith v. Papp Clinic, P.A., 808 F.2d 1449, 1452-53 (11th Cir. 1987) ("[I]f the employer fired an employee because it honestly believed that the employee had

AO 72A
(Rev. 8/82)

violated a company policy, even if it was mistaken in such belief, the discharge is not 'because of race'").

Given the dearth of evidence buttressing Plaintiff's claims, the Court cannot credit Plaintiff's allegation that her termination was pretextual. Plaintiff has failed to offer a similarly situated comparator and has failed to offer evidence of pretext. Therefore, summary judgment is appropriate on Plaintiff's Title VII employment discrimination claim.

## III. Plaintiff's Claim for Hostile Work Environment Fails

Plaintiff also alleges that Defendant subjected her to a hostile work environment. Dkt. No. 29 ¶ 9-10, 45-50. To establish this claim, Plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to racial harassment; (3) the harassment was based on her race; (4) the harassment was severe or pervasive enough to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for the environment under a theory of either vicarious or direct liability. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir.2002). Plaintiff claims that she was harassed and subjected to a hostile work environment when (1) Harrell reprimanded her for not taking a timely lunch break and (2) she did not immediately comply with Harrell's instructions regarding her lunch break. See Dkt. No. 36, pp. 9-13.

AO 72A
(Rev. 8/82)

This Court cannot conclude that Plaintiff suffered a violation of Title VII under a theory of hostile work environment, even viewing Harrell's behavior in the light most favorable to Plaintiff. That Harrell reprimanded her and followed her to the parking lot where he spoke to her in an angry tone while pointing at her and swinging his arm cannot be considered sufficiently severe or pervasive to create a hostile work environment. Dkt. No. 33-20, 44:3-9. The Court notes that "Title VII does not enact a 'general civility code' and [it] does not make actionable ordinary workplace tribulations." Byrd v. Postmaster Gen., 582 F. App'x 787, 790 (11th Cir. Sep. 3, 2014) (citing Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1234 (11th Cir. 2006) (quotation marks omitted) (explaining that for the purposes of a Title VII analysis, "innocuous statements or conduct, or boorish ones, unrelated to a protected ground are not counted")). Plaintiff must instead show that Harrell's conduct created a workplace permeated with "discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). The incident in question here cannot meet that exacting standard because: (1) the incident between Harrell and Plaintiff occurred only one time; (2) there is no evidence supporting her

AO 72A
(Rev. 8/82)

allegation that he physically threatened her; and (3) the conduct did not interfere with her work performance. Therefore, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's hostile work environment claim.

## IV. Plaintiff's Claim for Retaliation Fails

"Title VII protects employees against retaliation by an employer for participation in an employment discrimination case." Donnellon v. Freuhauf Corp., 794 F.2d 598, 600 (11th Cir. 1986). To establish a Title VII retaliation claim, Plaintiff must prove that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a casual relation between the protected activity and adverse action. Butler v. Ala. Dept. of Transp., 536 F.3d 1209, 1212-13 (11th Cir. 2008) (quoting Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008)). After the plaintiff establishes a prima facie case, the employer may present a legitimate, non-retaliatory reason for the action. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001) (citing Olmstead v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998)). However, "[t]he ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff." Id.

AO 72A
(Rev. 8/82)

Here, Plaintiff's claim for retaliation fails. Plaintiff argues that she was retaliated against when: (1) Plaintiff told a co-worker that Harrell was harassing her; (2) Bolder issued Plaintiff an oral warning on July 31, 2013; and (3) she was reprimanded and ultimately terminated for rules and policies that other employees in the unit were not required to adhere to in the same manner. Dkt. No. 36, pp. 13-20.

As an initial matter, the Court considers Plaintiff's February 3, 2015 termination in the context of her retaliation claim. While involuntary termination is certainly an adverse employment action, Plaintiff fails to establish this occurred in retaliation for her July 9, 2013 EEOC claim. Plaintiff has provided no evidence of retaliation outside of the fact she was terminated nearly eighteen months after she filed her EEOC claim. The causation burden may be met by establishing temporal proximity between the statutorily protected activity and the adverse employment action. Brungart v. BellSouth Telecomm., Inc., 231 F.3d 791, 798-99 (11th Cir. 2000). Temporal proximity alone, however, must be "very close" in order to satisfy the causation burden. Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (internal citations omitted). Eighteen months is more than enough time to break the chain of causation between Plaintiff's July 9, 2013 EEOC claim and her February 3, 2015 termination. The Eleventh Circuit has held that time periods

AO 72A
(Rev. 8/82)

far below eighteen months are insufficient to establish causation. <u>Thomas v. Cooper Lighting, Inc.</u>, 506 F.3d 1361, 1363 (11th Cir. 2007) (holding three to four months insufficient); <u>see also</u> <u>Jiles v. United Parcel Serv., Inc.</u>, 360 F. App'x 61, 63 (11th Cir. 2010) (holding eight months insufficient). Therefore, while Plaintiff's February 3, 2015 termination does indeed constitute an adverse employment action, she fails to establish that her termination was caused due to her July 9, 2013 EEOC claim.

Plaintiff notes other incidents prior to her eventual termination that she argues are adverse employment actions. All of these incidents fall short of establishing an adverse employment action for the purposes of a retaliation claim. Not all negative conduct by an employer that affects an employee constitutes an adverse employment action. "Criticisms . . . and temporary non-substantial changes in work assignments are not actions that have a 'serious and material effect' on the terms and conditions of employment." <u>Jenkins v. Tuscaloosa City Bd. of Educ.</u>, 72 F. Supp. 3d 1238, 1256 (N.D. Ala. Dec. 9, 2014) (citing <u>White v. Hall</u>, 389 F. App'x 956, 960 (11th Cir. 2010)); <u>see also</u> <u>Belt v. Ala. Historical Comm'n</u>, 181 F. App'x 763, 763 (11th Cir. 2006) (holding that minor changes to an employee's job duties—including suspending authority to order inventory and requiring reports to go through a supervisor—did not constitute

AO 72A
(Rev. 8/82)

an adverse employment action). Adverse employment actions are instead "serious and material change in the terms, conditions, or privileges of employment . . . as viewed by a reasonable person in the circumstances." Davis v. Town of Lake Park, 245 F.3d 1232, 1238 (11th Cir. 2001).

Plaintiff alleges that she was retaliated against by being forced to work weekend shifts. Dkt. No. 38 pp. 4. Plaintiff, however, was immediately relieved of her weekend shift duties when she notified her superiors this change interfered with her ability to care for her disabled son. See, e.g., Dkt. No. 33-6, ¶ 7; Dkt. No. 33-20, 64:1-8; Dkt. No. 33-13, ¶ 4. Regardless, the assignment of weekend shifts, equally distributed among all employees, is not a serious and material change to Plaintiff's employment. Davis, 245 F.3d at 1238.

Further, the 2013 restructuring of the office cannot constitute an adverse employment action, given that the entire department was reorganized. An adverse employment action cannot be established where there is a "department-wide reorganization made for purposes of efficiency and profitability." Robinson v. Time Warner, Inc., 92 F. Supp. 2d 318, 331 (S.D.N.Y. Apr. 21, 2000). Here, such a department-wide reorganization occurred, ostensibly to improve efficiency and operations within the office. Everyone in the office was equally affected by the reorganization and regardless there were no "materially adverse"

AO 72A
(Rev. 8/82)

changes to Plaintiff's job duties. The following changes were made to Plaintiff's position: (1) her job title changed from Senior Cashier to Senior Customer Service Specialist; and (2) her work area changed from a counter to a desk in the same building. Dkt. No. 33-6, ¶ 6; Dkt. No. 33-20, 62:14-16. Such changes were minimal and simply not indicative of any type of animus toward Plaintiff. The Court notes that there were no changes to Plaintiff's fundamental terms of employment such as her pay, primary job duties, or hours. Dkt. No. 33-6, ¶ 6; Dkt. No. 33-20, 62:14-16.

Plaintiff also sets forth a number of conclusory allegations regarding incidents that allegedly occurred in the office. Specifically, Plaintiff claims that: (1) as a result of her complaints regarding the restructuring within the office, Jacobs issued a Memorandum threatening to reprimand her; and (2) other Caucasian employees with similar disciplinary histories and records were not reprimanded and ultimately terminated as she was. Dkt. No. 36, pp. 4, 9-13. In response, Defendant contends that Plaintiff failed to support her allegations with evidence from the record. Dkt. No. 42, pp. 2-7.

The Court agrees with Defendant. Pursuant to Federal Rule of Civil Procedure 56, Plaintiff needs to set forth "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. Here, Plaintiff failed to produce any

AO 72A
(Rev. 8/82)

facts supporting her conclusory statements. Indeed, Plaintiff failed to include, as part of the record, the memorandum from Jacobs that allegedly threatened to reprimand her for complaining about the reorganization. Additionally, Plaintiff failed to both name those individuals who allegedly violated Defendant's policies and to produce any facts relating to their disciplinary history. Without such evidence in the record, the Court cannot simply credit Plaintiff's conclusory statements as true. Accordingly, summary judgment is appropriate.

Since Plaintiff is unable to prove the necessary elements to satisfy a prima facie case, her claim for retaliation fails.[4] Accordingly, summary judgment will be **GRANTED** on Plaintiff's retaliation claim.

### CONCLUSION

Therefore, for the foregoing reasons stated herein, it is hereby ordered that Defendant's Motion to Strike Affidavit of Barbra Paulk (Dkt. No. 41) and Defendant's Motion for Summary Judgment (Dkt. No. 33) are **GRANTED**. The Clerk of Court is directed to enter the appropriate judgment and to close this case.

---

[4] The Court additionally notes that Plaintiff alludes to making a claim for retaliatory hostile work environment in her Amended Complaint. Dkt. No. 1 ¶ 1. This claim includes the same elements as a hostile work environment claim under Title VII except that it may be based upon harassment due to retaliation for a protected activity rather than that due to being a member of a protected class. <u>Gowski v. Peake</u>, 682 F.3d 1299 (11th Cir. 2012). As Plaintiff has failed to establish a prima facie case for retaliation or discrimination, this claim fails as well.

AO 72A
(Rev. 8/82)

**SO ORDERED**, this 30TH day of September, 2016.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)